IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Mary Jane Winegeart, Individually | § | |
| And As Representative of the | § | |
| Estate of James Winegeart, Deceased; | § | |
| Nancy Barton; and | § | |
| Vouncia Winegeart, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action No. 2:14-cv-00242-J |
| | § | |
| Construction Equipment Company, | § | |
| a/k/a CEC, a/k/a CEC of Texas; | § | |
| R.D. Olson MFG, Inc., | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANT CEC'S CORPORARTE REPRESENTATIVE AND MOTION FOR SANCTIONS.**

**To the Honorable United States Judge of Said Court:**

COME NOW, Mary Jane Winegeart, Individually and as Representative of the Estate of James Winegeart, deceased, Nancy Barton, and Vouncia Winegeart (hereinafter referred to as "Plaintiffs"), by and through undersigned counsel, and respectfully file this Motion for Protective Order Regarding Defendant CEC's Corporate Representative and Motion for Sanctions.

In support hereof, Plaintiffs would state and show unto this Honorable Court the following:

## I.  BACKGROUND

1. This case revolves around the death of James Winegeart, who was working at Allied Mining when he was caught in a CEC rock crusher while trying to unjam the machine. Mr. Winegeart was killed in this process. Plaintiffs' wife, daughter and Mother have brought a products liability suit against the manufacturer and designer of the rock crusher, CEC and R.D. Olson.

2. On February 6, 2015 Plaintiffs requested a 30(b)(6) deposition of both CEC and R.D. Olson's corporate representatives. (See Deposition Notice for CEC, attached as Ex. A). After a period of negotiation and discussion, Plaintiffs sent a final notice for the 30(b)(6) depositions of CEC's corporate representative, Jimmy Mitchell, on April 8, 2015.[1] (See Deposition Notice, attached as Ex. B). The deposition took place on April 23, 2015 in Portland, OR.

3. The Corporate representative of CEC, Jimmy Mitchell, did very little to prepare for the deposition and was unable to answer a multitude of questions on the topics in which he was designated.

## II. CASE LAW

1. A company offering a rule 30(b)(6)witness "must make a conscientious good-faith endeavor to ... *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject mat-

---

[1] Some of the delay was due to all parties desire to inspect the rock crusher. Weather interfered with the ability of the first scheduled inspection to take place, which led to a motion to extend time for the expert reports to be provided as well as a reschedule of the inspection.

ters." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir.2006) (citations and internal quotation marks omitted).

2. "[w]hen a corporation … designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all. *Citgo Petroleum Corp. v. Odfjell Seachem*, et al., 2013 WL 2289951, at *12, (S.D. Tex. May 23, 2013)(citing *Resolution TrustCorp v. S. Union Co.*, 985 F.2d 196, 196-97 (5th Cir. 1993)(affirming award of costs and fees incurred in the deposition of a witness who possessed no knowledge relevant to the subject matters identified in the Rule 30(b)(6) notice.)

3. The courts continuously follow the holding in Southern Union:

   > Following the reasoning in *Southern Union,* several courts similarly have read the phrase "fails ... to appear" in Rule 37(d) pragmatically in light of the purposes of Rule 30(b)(6) and the parties' obligations thereunder. *See, e.g., Starlight Int'l Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D.Kan.1999) ("Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."); *The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y.1997) ("'Producing an unprepared witness is tantamount to a failure to appear.'") (quoting *United States v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C.1996)); *Taylor*, 166 F.R.D. at 363 ("[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings."); *Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi,* No. 94 CIV. 1942, 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995) (agreeing with rule announced in *Southern Union* that providing a wholly inadequate witness may amount to non-

> appearance under Rule 30( b)( 6), but finding that sanctions were not warranted in the circumstances of that case); *Municipal Subdistrict, Northern Colo. Water Conservancy District v. OXY USA, Inc.*, 990 P.2d 701, 710 (Colo.1999) (en banc) (following *Southern Union*, 985 F.2d at 197, and holding that trial court may issue sanctions for failure to appear under Col.R.Civ.P. 37(d)—the state's analogue to Fed.R.Civ.P. 37(d)—when a corporation designates a deponent who appears but is unable to answer all the questions specified in the Col.R.Civ.P. 30(b)(6) notice); *see also, e.g., Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78–79 (S.D.N.Y.1991) ("[A] party that fails to provide witnesses knowledgeable in the areas requested in a Rule 30( b)( 6) notice is likewise subject to sanctions."); *Thomas v. Hoffmann–LaRoche, Inc.*, 126 F.R.D. 522, 525 (N.D.Miss.1989) ("Sanctions are appropriate when a party fails to comply with a request under Rule 30(b)(6) to provide a knowledgeable deponent to testify on behalf of the organization."*304 ); *see generally Boland Marine & Mfg. Co. v. M/V Bright Field*, No. 97–3097, 1999 WL 280451, at *3 (E.D.La. May 3, 1999) (acknowledging the rule announced in *Southern Union* but finding that deponent was prepared adequately and that sanctions were not warranted).
>
> *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., et al.*, 228 F.3d 275, 303-04 (3d Cir.2000)

4. The courts indicate such occurrences are sanctionable under Rule 37(d).

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf. *See generally* Fed.R.Civ.P. 30 advisory committee's notes (stating that the procedure outlined in subdivision (b)(6) should be viewed as "an added facility for discovery" and would "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge" of relevant facts). "For courts to permit litigants to disregard the responsibilities that attend the conduct of litigation would be tantamount to 'encouraging dilatory tactics.' " *Al Barnett & Son, Inc.*, 611 F.2d at 35 (quoting *Cine Forty–Second Street Theatre v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979)). Thus, we hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "[p]roducing an unprepared witness is tantamount

> a failure to appear" that is sanctionable under Rule 37(d). *See Taylor*, 166 F.R.D. at 363. Accordingly, we conclude that the district court did not commit an error of law in affirming the magistrate judge's sanctions order entered pursuant to Rule 37(d), as the magistrate correctly applied the Court of Appeals for the Fifth Circuit's construction, which we approve, of the phrase "fails ... to appear" in *Southern Union*.
>
> *Black Horse* at 304 (quoting *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996).

## III. DEPOSITION OF CORPORATE REPRESENTATIVE FOR CEC IS TANTAMOUNT TO NO DEPOSITION

1. On February 6, 2015 Plaintiffs requested a 30(b)(6) deposition of CEC's corporate representative. (See Depo. Notice, Ex. A, attached).

2. On March 24, 2015 Defendant CEC indicated they had two people to identify as corporate representatives without indicating which topics of interest each representative would cover. (See Letter of 3/24/15, attached as Ex. C). On March 30, 2015, Plaintiffs' counsel requested that the topics for Jimmy Mitchell be identified. On March 31, 2015 it was indicted by email that CEC's counsel was guessing Jimmy Mitchell could answer most of the questions. (See Email of 3/31/15, attached as Ex. D). It is of note, Jimmy Mitchell was the only corporate representative available prior to the Plaintiffs' having to provide an expert report. *Id.*

3. On April 21, 2015 at 7:45 p.m. (a day and a half prior to the deposition), CEC's counsel sent by Email a detailed breakdown of the areas Jimmy Mitchell could cover. (See Email of 4/21/15, attached as Ex. E). Again, it is noteworthy the deadline for expert reports was April 29, 2015.

4. Jimmy Mitchell testified he had seen this same Email about a week and half prior to his deposition. (see Depo. Of Jimmy Mitchell, P. 7. L. 16-25; P. 8 L. 1-12, at-

tached as Ex. F). Thus, CEC hid from Plaintiffs the breakdown of topics Jimmy Mitchel would cover for over a week, if not longer, and waited until only a day and a half before the deposition to reveal this knowledge.

5. Additionally, CEC was aware of the deposition for a few months, but it was apparent Jimmy Mitchell was not prepared for his deposition admitting he did not do anything except a cursory review of a few documents and meet with CEC's counsel for a couple of hours.

> Q: When did you first learn that you would be testifying on behalf of CEC in this lawsuit?
> A: I don't recall the date. It's been a few months.
> *Id.* at P. 8 L. 15-18.
>
> Q. Well, how much preparation have you had before testifying today? What did you do, what did you review, how long did you spend talking to people, that sort of thing?
> A. I spent a couple of hours yesterday with Tom to prep for the deposition, and he told me to answer the questions as honestly and directly as possible, and that's what I'm prepared to do.
> Q. Aside from spending a couple of hours yesterday, what else have you done to prepare for this deposition?
> A. Less than I was asked to do. I was asked to reread my deposition, and review some other documents; and I did not do it.
> Q. You didn't do either of those two things?
> A. No, I did not.
> Q. So is it fair that the only thing that you have done to prepare for this deposition is to spend a couple of hours yesterday with Mr. Farris; is that right?
> A. Correct.
> *Id.* at P. 9 L. 2-22.

6. Besides this concern regarding his preparation, Jimmy Mitchell was unable to answer a multitude of questions posed to him that were within the topics for which he was designated:

Jimmy Mitchell testified he –

- Did not know what test, if any, were performed on the subject rock crusher; (*Id.* at P. 19 L. 24-25; P. 26 L. 1-9)

- Did not know what tests if any were done by component part manufacturers of the engine. (*Id.* at P. 20 L. 22-25)

- Did not know who designed the track of the subject rock crusher. (*Id.* at P. 21 L. 1-4).

- Did not know what component parts of the subject rock crusher CEC designed. (*Id.* at P. 21 L. 25; P. 22 L. 1-3).

- Did not know whether or not safety testing was done on the subject rock crusher. (*Id.* at P. 25, L. 9-11).

- Did not know what the hierarchy of safety design for guarding is and if CEC knows what it is. (*Id.* at P. 25 L. 21-25).

- Did not know whether or not CEC did any hazard analysis of the subject crusher. (*Id.* at P. 26 L. 21-23).

- Did not know if CEC or an employee was part of any safety counsel. (*Id.* at P. 26 L. 24-25; P. 27 L. 1-2).

- Did not know what MSHA considers to be the most accident prone parts of a conveyor. (*Id.* at P. 27 L. 3-6).

- Did not know if CEC or any employee kept updated on MSHA regulations or MSHA publications. (*Id.* at P. 27 L. 7-10).

- Did not know if CEC ever looked at how many accidents happened due to performing maintenance or operations around an energized belt. (*Id.* at P. 27 L. 15-21).

- Did not know how many times CEC has done reverse engineering on machines to review other technology. (*Id.* at P. 29 L. 21-25; P. 30 L. 1).

- Did not know if CEC was a member of CEMA [conveyor equipment manufacturers association]. (*Id.* at P. 31 L. 1-3).

- Did not know for certain if CEC was a member of AEM or how long, if at all. [Association of Equipment Manufacturers]. (*Id.* at P. 31 L. 4-7)

- Did not know if CEC looks at competitors marketing materials regarding their products. (*Id.* at P. 31 L. 21-23).

- Did not know if CEC was even familiar with MSHA's regulations. (*Id.* at P. 31 L. 24-25; P. 32 L. 1-2).

- Did not know if CEC was familiar with ANSI standards. (*Id.* at P. 32 L. 3-4).

- Did not know if CEC was familiar with European, Australian or Canadian Standards. (*Id.* at P. 32 L. 6-11).

- Did not know if CEC ever obtained any patents on any safety features for any piece of machinery (*Id.* at P. 33 L. 14-16).

- Did not know if there were any new or innovative features on the subject rock crusher. (*Id.* at P. 33 L. 17-21).

- Did not know if anyone with CEC has ever given any presentations to any group on any aspect of safety or the design of any piece of machinery (*Id.* at P. 34 L. 25; P. 35 L. 1-6).

- Did not know if CEC had ever developed any new safety measure on any piece of machinery. (*Id.* at P. 35 L. 13-16)

- Did not know what the engineering triad is. (*Id.* at P. 35 L. 17-20).

- Did not know if CEC ever marketed its machine as being safe. (*Id.* at P. 36 L. 6-8).

- Did not know if any other rock crushers of other manufacturers contained guards such as at subject in this suit. (*Id.* at P. 40 L. 8-13).

- Did not know of any regulations regarding putting emergency stops on mobile crushers. (*Id.* at P. 40 L. 17-20).

- Did not know if CEC had an understanding of any industry standards regarding emergency stops on the corners of the rock crusher. (*Id.* at P. 41 L. 4-7).

- Did not know the main objective by CEC for building the rock crusher. (*Id.* at P. 43 L. 3-6).

- Did not know how many guards there were on the engine compartment. (*Id.* at P. 45 L. 3-5).

- Did not know if there were any standards or regulations, private or governmental, which CEC met. (*Id.* at P. 56 L. 14-17).

- Guessed there were not any competitors with different safety designs. (*Id.* at P. 56 L. 18-23).

- Did not know if CEC or anyone with CEC knows the criteria for the regulations related to guarding against a possible hazard. (*Id.* at P. 56 L. 24-25; P. 57 L. 1-14).

- Dis not know if CEC is meeting any of the criteria related to guarding against a possible hazards. (*Id.* at P. 57 L. 15-18).

- Except for a few, did not know if there are any additional emails or com-

    munication to co-defendant R.D. Olson on the design of the subject rock crusher. (*Id.* at P. 61. L. 9-13).

7. The preparation and subsequent responses are tantamount to his not being there. The information Jimmy Mitchell has provided in saying 'I don't know' is worse than if he had simply answered 'no' to these questions. At this point, Plaintiffs are greatly prejudiced and can be ambushed at a future deposition or at trial with a witness that does 'know' or Jimmy Mitchell suddenly 're-membering.' There was an additional corporate representative for CEC, Roger Smith, designated to testify, but it was on different subjects except for one. Defendant CEC refused to make this other corporate representative available at this critical time. As it stands now, CEC may have Roger Smith suddenly 'know' and provide answers to some of the same type questions, or have Jimmy Mitchell suddenly recall answers instead of 'I don't know' at trial. More importantly, Plaintiffs' expert has had to rely on the answers already provided by Jimmy Mitchell for his report. This is the exact type of gamesmanship which is to be avoided and not only makes a mockery of the 30(b)(6) deposition process but also prejudices the Plaintiffs.

### IV. SANCTIONS – PROTECTIVE ORDER, FEES AND EXPENSES SOUGHT

1. Plaintiffs should be permitted a protective order requiring CEC's corporate representative, Roger Smith, travel to Dallas for his deposition, and Plaintiffs' expert should be able to utilize any responses from Roger Smith to

amend his report, if needed, without any ramifications from any party. Additionally, CEC should be required to provide a corporate representative who can adequately respond to the topics requested instead of saying, "I don't know," and Plaintiffs' expert should, again, be permitted to amend his report without repercussions, if needed. In the alternative, CEC should not be permitted to submit any other testimony of witnesses (such as expert(s), corporate representative(s) or employee(s)) who suddenly do know about topics which Jimmy Mitchel failed to answer.

2. Plaintiffs also request that the time and expense for taking Jimmy Mitchell's deposition be paid to Plaintiffs' counsel. Rule 37(d) permits such a requirement. *Id.* Plaintiffs' counsel spent fifteen (15) hours preparing and taking the deposition of Jimmy Mitchell at the fee of $300/hour, and the expenses for the deposition was $812.89 for airfare. (see Aff. of Andrew G. Counts, attached as Ex. G). Plaintiffs should be reimbursed these fees and expenses.

### V. SUMMARY

Plaintiffs depend on the prepared and forthright testimony of corporate representatives in product liability cases. This case is no exception. The rules requires the corporate representative designated by the defendant be prepared for the topics of interest in the deposition. Defendant CEC designated Jimmy Mitchell as a corporate representative on the majority of topics and up until a day and half prior to the deposition held out to the Plaintiffs that he

would likely be able to answer most of the questions asked. Despite the fact they knew exactly what he would be designated to answer up to a week and half prior to his deposition. Even then, at his deposition, he answered 'I don't know' to a multitude of questions on these topics. This type of gamesmanship is prejudicial to the Plaintiffs since expert reports were due only a few days after the deposition and Plaintiffs are required to rely on these answers for their expert's report. 'I don't know' leaves a door open for Defendant CEC to surprise the Plaintiffs at future depositions or at trial with witnesses who essentially say, 'I do know and here's the answer.' This should not be permitted. Defendant CEC should be required to provide an appropriate corporate representative to fully answer the questions on the topics of interest, or there should not be allowed any witness (expert, corporate representative or other) from Defendant CEC to indicate any other knowledge except 'I don't know' to those same types of questions in which Jimmy Mitchell responded 'I don't know.' Additionally, Plaintiffs should be awarded fees and expenses for taking Jimmy Mitchell's deposition.

Respectfully submitted,

**The TRACY firm**


/s/ Stewart D. Matthews
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
5473 Blair Road, Suite 200
Dallas, Texas  75231
(214) 324-9000 – Phone
(972) 387-2205 – Fax


*And*

| **Freeman Wilcox Palmer Nance** | **Smith Wilson Law Firm** |
|---|---|
| Greg S. Freeman | Mark A. Wilson |
| State Bar No. 24055504 | State Bar No. 21704450 |
| Freeman@fwpnlaw.com | Mark@smithwilsonlaw.com |
| 2403 Line Avenue | P.O. Box 212 |
| Amarillo, Texas  79106 | Canyon, Texas  79015 |
| (806) 372-7700 – Phone | (806) 372-4120 – Phone |
| (806) 373-4068 – Fax | (806) 372-4501 – Fax |
| **Attorneys for Winegeart Plaintiffs** | **Attorneys for Plaintiffs Nancy Barton and Vouncia Winegeart** |

## CERTIFICATE OF CONFERENCE

I hereby certify I approached counsel for CEC regarding the above motion, and he indicated he was opposed to the motion.

/s/ Stewart D. Matthews

Stewart D. Matthews

## CERTIFICATE OF SERVICE

      I hereby certify that on May 4, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

/s/ Stewart D. Matthews

Stewart D. Matthews